# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| NEIL L. RANLY, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00334 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

Plaintiff Neil L. Ranly brings this case challenging the Social Security Administration's denial of his applications for Disability Insurance Benefits and Supplemental Security Income.  He asserts here, as he did before the Administration, that he has been under a benefits-qualifying disability – starting on September 16, 2011 – due to 2 bulging disks in his lower back (L5/S1), 2 bulging disks in his neck (C3-C5), arthritis in his neck, a torn disk in his lower back, carpal tunnel syndrome in his right hand and possibly in his left hand, numbness/pain in both his legs and numbness in both arms, depression, and memory loss due to medication.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #6), Plaintiff's Supplemental Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record (Doc. #4), and the record as a whole.[2]

Plaintiff seeks a remand under Sentence 6 of 42 U.S.C. §405(g) for further proceedings on the ground that the administrative record contains new and material evidence concerning spinal-fusion surgery he underwent after an Administrative Law Judge, Barbara J. Welsh, denied his applications. The Commissioner contends that Plaintiff has not met his burden of establishing that the new evidence concerning his spinal-fusion surgery was material.

**II.     Background**

    **A.     Plaintiff's Vocational Background and Testimony**

Plaintiff was 35 years old on the date his asserted disability began. This placed him in the category of a "younger person" for purposes of resolving his claims for benefits. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] He graduated from high school. His past employment involved work as a laborer, machinist, on-the-road truck driver, and warehouse/swing driver. (Doc. #4, *PageID*## 428-34, 500). He lives with his wife and

---

[2] Plaintiff previously filed for benefits on January 14, 2011. (*PageID*# 155). His application was denied early in the administrative proceedings. It appears that Plaintiff did not seeks further review by an Administrative Law Judge. (Doc. #4, *PageID*## 123-86)).

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

two children.

At his hearing in April 2013 before Administrative Law Judge (ALJ) Welsch, Plaintiff testified that his last day of work was October 11, 2010. At that time, he was working as a backup-delivery driver for a beer distributor. The job required him to work when one of the regular delivery drivers called in sick for work. For 6 months after he stopped working, he continued to receive income – "[s]ick pay, basically" – due to union-contract requirements. His employment was then terminated because he could not return to work after his 6 months of paid leave. (*PageID#* 78).

Plaintiff testified that he cannot work because he has a lot of back, neck, and leg pain. His pain affects his ability to stand for a long time or walk far. He spends most of his days, 8 or 9 hours, lying down. *Id*. at 81, 91-92. The more he moves his neck, the more it bothers him. He testified that he needed to have his neck fused in 3 places. (*PageID#* 81)

Plaintiff takes Tramadol for pain, which helps "a little bit." *Id*. at 81-82. He rated the severity of his back pain at a level of 6-7 on a 1-10 scale (1 being very little pain; 10 being the worst pain); neck pain at level 6; and right knee at level 5. *Id*. at 92. Plaintiff testified that he had previously undergone fusion surgery, "where they cut off the backside of my spine and put the rods and screws in...." *Id*. at 89. After this surgery, his treating neurosurgeon, Dr. Minella, told him there is "nothing else I'll be able to do." (*PageID#* 89). Dr. Minella sent Plaintiff to get steroid injections to treat his neck pain. Plaintiff

understood from Dr. Minella that he will have to have fusion surgery in his neck at C5-7. (*PageID##* 89-90). Dr. Minella had Plaintiff treated with the injections before any neck surgery because after such surgery, Plaintiff would have limited neck mobility. Plaintiff used a cane 4 or 5 days a week, mainly in the morning because he is "not real stable on [his] feet." (*PageID#* 91).

When asked about problems with his hands, Plaintiff said he has "borderline carpal tunnel" of both hands, with his right hand worse than his left. (*PageID#* 92). He noted his elbow "locks up every once in a while," and his hands sometimes go numb while he is sleeping. (*Id.*). According to Plaintiff, a doctor wanted to perform carpal-tunnel-release surgery but did not want to do so while he was waiting on in back surgery. (*PageID##* 92-93).

Plaintiff testified, "[Dr. Minella] told me that if I go back to work, I'd have to find a completely different job -- I'd have to find something with absolutely no physical work in it." (*PageID#* 93). At the time of the ALJ's hearing, Dr. Minella had Plaintiff restricted from all work activity. (*Id.*).

As to his mental health and work abilities, Plaintiff testified that he had experienced "really bad depression in the last couple of years through all this." (*PageID#* 81). He explained that his mental health problems contributed to keeping him off of work, noting, "[T]here's some days I just don't even want to get out of bed. If it wasn't for my son, I probably wouldn't get out of bed." (*PageID#* 94).

Plaintiff testified that he does not believe he could work full-time at any job, noting, "I don't know what I could do that would be able to fall into my category where I'd be able to have free reign to lie down when I needed to." (*Id.*).

In terms of daily activities, Plaintiff was able to shop in public, spend time with his immediate family, visit with relatives, care for his young son during the day, and attend his daughter's school functions. (*PageID##* 82-86). He testified that he feeds his son, they read books, play games in bed, and walk around the block weather permitting. Plaintiff's son helps him put on socks. His son helped with the laundry, doing smaller than normal loads, and he cleaned dishes. Plaintiff read books regularly. He went grocery shopping with his family about once a week. He had a driver's license and drove about twice a week. He had not mowed grass since 2010. He had not gone fishing since before his back surgery in 2012. He described his fishing as basically fishing off the bank of a pond at the local town park. At the time of the hearing, he smoked about 7 or 8 cigarettes a day but was taking medication (Chantix) to help him quit.

B. **Medical Evidence**

The lengthy administrative record contains many medical records plus opinions from treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because the ALJ and the parties have summarized or cited to the pertinent records concerning Plaintiff's physical and mental impairments with citations to

specific evidence.

**III.    "Disability" Defined and the ALJ's Decision**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Welsch applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

ALJ Welsh concluded at Step 2 that Plaintiff had the severe impairments of degenerative disc disease of cervical and lumbar spine; degenerative joint disease of the right knee (chondromalacia of the patella/tear of lateral cartilage or meniscus of knee), obesity, left ulnar neuropathy, anxiety disorder, and depression. (Doc. #4, *PageID#* 47).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of

Impairments. *Id*. at 50-53.

At Step 4, ALJ Welsh assessed Plaintiff's residual functional capacity, or the most he could do despite his physical and mental impairments. The ALJ concluded that Plaintiff could perform all the functions of sedentary and light work except the following:

> [B]ecause of his musculoskeletal pain, obesity and possible medication side-effects, he should not climb ladders, ropes or scaffolds or work at unprotected heights; because of possible pain exacerbation he should not perform more than occasional bending and/or stooping ...; because of possible pain exacerbation due to his cervical and upper extremity symptoms he should not perform more than occasional over-shoulder work .... Because of all his mental symptoms combined he may at times have moderate problems with concentration, persistence and or pace when attempting complex or detailed tasks so he is limited to jobs that do not require complex or detailed tasks, that are unskilled, simple, routine and repetitive tasks ....

*Id*. at 53. With these abilities and limitations in mind the ALJ concluded at Step 4 that Plaintiff could not perform his past relevant work as a laborer, a machinist, an on-the-road truck driver, or a warehouse/swing driver. *Id*. at 61. At Step 5, the ALJ found that Plaintiff could perform a substantial number of jobs available in the national economy including, for instance, small-parts assembler, mail clerk, and charge-account clerk. *Id*. at 62.

The above conclusions, along with the ALJ's findings throughout her sequential evaluation, led her to conclude that Plaintiff was not under a benefits-qualifying disability.

**IV.     Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

8

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V. Discussion

Plaintiff raises alternative arguments. On one hand, he seeks an Order reversing the ALJ's decision on the ground that the ALJ improperly evaluated his treating neurosurgeon Dr. Minella's opinions and by erroneously assessing Plaintiff's credibility. On the other hand, he seeks a remand under Sentence 6 of 42 U.S.C. § 405(g) due to evidence concerning his cervical-fusion surgery, which he underwent after ALJ Welsch entered her decision.

When the Social Security Administration's Appeals Council denies a claimant's request for review – as it did with Plaintiff – the ALJ's written decision becomes the final decision of the Commissioner. *Casey v. Secy. of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). If the Appeals Council considers new evidence and decides not to review the merits of claimant's benefits applications, "the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r. of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). This is precisely what happened during Plaintiff's administrative proceedings.

Plaintiff underwent cervical spine surgery on July 30, 2013, about 6 weeks after ALJ Welsh issued her written non-disability decision. Plaintiff submitted to the Appeals Council Dr. Minella's surgery report and treatment records concerning Plaintiff's July 30,

2013 surgery.  (Doc. #4, *PageID* at 30-31, 38-39, 1214-24).  The Appeals Council denied Plaintiff's request for review, specifically finding "no reason to review the Administrative Law Judge's decision." *Id*. at 30.  In these circumstances, Plaintiff's records concerning his July 30, 2013 surgery "cannot be considered part of the record for purposes of substantial evidence review."  *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996)).

Yet, Sentence 6 of 42 U.S.C. §405(g) authorizes the district courts to "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding."  *Id*.  In the present case, the first and third elements – "newness" and "good cause" – are readily dispatched, while materiality requires more discussion.

The evidence concerning Plaintiff's surgery on July 30, 2013 constitutes "new" evidence because it was "was 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Foster,* 279 F.3d at 357 (quoting, in part, *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)).  "Good cause" exists because Plaintiff had reasonable justification for not acquiring and presenting the evidence for inclusion in the hearing before the ALJ." *Foster*,  279 F.3d at 357.  Plaintiff's cervical spine surgery did not occur until 6 weeks after ALJ Welsh issued her decision.  Plaintiff had a reasonable justification for not undergoing surgery until then because Dr. Minella was waiting for 1 year to pass after his June 7, 2012 back surgery.  (Doc. #4, PageID at 89-90, 1073-86,

10

1093-1102).

Turning to materiality, Plaintiff's new evidence must: (1) be relevant and probative of his condition prior to the ALJ's decision, and (2) establish a reasonable probability that the ALJ would have reached a different decision if she had considered the evidence. *See Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hollon*, 447 F.3d at 488. Dr. Minella's report tends to support Plaintiff's subjective complaints about his daily struggles due to his orthopedic and neurological impairments in his cervical and lumbar spine, along with his right knee and left hand, and therefore is probative of his credibility, if not also his disability status. The Commissioner's contentions notwithstanding, such evidence is probative of the elements necessary to show that Plaintiff's back condition meets or equals the criteria of Listings 1.02A, 1.02B, and 1.04, which in turn may reasonably show at Step 3 of the sequential evaluation that he is under a benefits-qualifying disability. Further, Dr. Minella, a neurosurgeon, is a specialist in neurologic disorders and treatment. Thus, there is a reasonable probability that the ALJ would have reached a different conclusion about Plaintiff's credibility and the weight due Dr. Minella's opinions about Plaintiff's work limitations.

Accordingly, for the above reasons, Plaintiff has demonstrated that a remand of this matter to the Social Security Administration is warranted under Sentence 6 of 42 U.S.C. §405(g). Additionally, given the reasonably probable impact this new and material evidence might have on the outcome on the Administration's further proceedings, and the

resulting need for a Sentence 6 remand, the parties' remaining substantive contentions are presently moot. *See Melkonyan*, 501 U.S. at 98 (Sentence 6 remand "does not rule in any way as to the correctness of the administrative determination.").

## IT IS THEREFORE RECOMMENDED THAT:

1. This case be **REMANDED** to the Commissioner under Sentence 6 of 42 U.S.C. §405(g); and

2. This case be **administratively closed** while the Social Security Administration considers the new and material evidence on remand. However, this Court retains jurisdiction over this action such that should Plaintiff be dissatisfied with the new decision of the Commissioner on remand, Plaintiff may petition the Court for entry of an Order reinstating the case on the active docket for judicial review of the new decision. Plaintiff must file said petition within 30 days of the date of the Commissioner's final decision. If neither party takes issue with the Commissioner's final decision following remand, the prevailing party shall, within 30 days of the Commissioner's decision, petition the Court for entry of a Final Order adopting and ratifying the new decision.

October 26, 2015

                                                  s/Sharon L. Ovington
                                                  Sharon L. Ovington
                                     Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).